1

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

2

HENRY C. DARMSTADTER
RYAN S. WATSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-307-6481 / 202-514-5173 (v)
202-307-0054 (f)
henry.c.darmstadter@usdoj.gov
ryan.watson@usdoj.gov

3

4

5

6

7

8

*Attorneys for Special Agent Gabriel Kornacki*

9

LAURA DUFFY
United States Attorney
Southern District of California
*Of Counsel*

10

11

12

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14

John Doe Company, and on behalf of all
similarly situated in the State of
California,

Case No. 3:13-cv-2099-MMA-AGS

**SPECIAL AGENT KORNACKI'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS**

15

Plaintiff,

16

v.

17

John Does 1-15,

**DATE: December 19, 2016
TIME:  2:30 p.m.
COURTROOM: 3A**

18

Defendant.

19

20

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

**I. INTRODUCTION** ....................................................................1

**II. MOTION TO DISMISS** ...........................................................3

    **A)  Plaintiff improperly brought this lawsuit as an anonymous plaintiff, and its claims are time barred.**........................................................3

        *1)  Plaintiff is improperly identified.* ...............................................3

        *2)  Plaintiff improperly names John Doe defendants without pleading ignorance of their identities.* ...............................................5

        *3)  Plaintiff's claims are barred by the applicable statute of limitation.* ...........6

    **B)  Injunctive and declaratory relief is unavailable under *Bivens*.** .................9

    **C)  The Federal Rules of Criminal Procedure provide a remedy for Plaintiff.** ......................................11

    **D)  Since an alternative remedy is available under Rule 41(g), a *Bivens* remedy is precluded.**........................................................13

    **E)  Collateral estoppel bars Plaintiff from relitigating issues previously adjudicated in the Pollock criminal matter.**......................................15

        *1)  The Court granted the United States' motion to access the P Serve in the underlying criminal matter.* ...............................................15

        *2)  Plaintiff's claims are barred by collateral estoppel.* .................................17

    **E)  The Complaint fails to state a *Bivens* claim.** .................................19

    **F)  Special Agent Kornacki should be granted qualified immunity**.............20

        *1)  The Complaint does not make any specific allegations against Kornacki.* 21

        *2)  The search warrant was not overbroad.* .....................................22

        *3)  Special Agent Kornacki did not exceed the scope of the search warrant.*...24

## <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ...........................7

*Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) ...........................7

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).................................................... 19, 20

*Ashford v. Skiles*, 837 F. Supp. 108 (E.D. Pa. 1993) .............................................18

*Baird v. Holton*, 806 F. Supp. 2d 53 (D.D.C. 2011) ...............................................14

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388
    (1971).................................................................................................................. 1, 13

*Butler v. National Community Renaissance of California*, 766 F.3d 1191, 1201-02
    (9th Cir. 2014) .....................................................................................................7

*Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d
    1157 (9th Cir. 2007) ....................................................................................... 9, 10

*Doe v. Kamehameha Sch.*, 596 F.3d 1036 (9th Cir. 2010) .......................................4

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) ......................1

*Fara Estates Homeowners Ass'n v. Fara Estates, Ltd*, 134 F.3d 377, 1998 WL
    10744 *6 (9th Cir. 1998).......................................................................................6

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) ..6

*FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ..............................................................10

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................6, 7

*Garmon v. County of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).................20

*General Motors Corp. v. Superior Court*, 48 Cal.App.4th 580, 594 (1996)............6

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 979
    (E.D. Cal. 2013)................................................................................................3, 5

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)....................................................21

*Hawkins v. Pac. Coast Bldg. Prods., Inc.* 124 Cal.App.4th 1497 (2004) ................7

*Henderson v. Superior Court*, 2006 WL 1392476 *2
    (Cal. Ct. App. May 23,  2006)..............................................................................6

*In re Return of Seized Property, $4,000 in U.S. Currency*, 130 F. Supp. 3d 1354
    (S.D. Cal. 2015)..................................................................................................10

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) .......................17

*Kubal v. Discount Tire.com*, 2012 WL 3648607 *4 (S.D. Cal. August 23, 2012)....5

*Leyland v. Edwards*, 797 F. Supp. 2d 7 (D.D.C. 2011)...........................................14

*Lucero v. County of Kern*, 2007 WL 196292 *4-7
    (Cal. Ct. App. January 23, 2007).........................................................................6

*Matthews v. Macanas*, 990 F.2d 467 (9th Cir. 1993) ............................................18

*McClatchy v. Coblentz, Patch, Duffy & Bass, LLP*, 247 Cal.App.4th 368, 372 (2016).................................................................................5, 6
*Miller v. Thomas*, 121 Cal.App.3d 440, 445 (1981)..........................................7
*Ordonez v. United States*, 680 F.3d 1135, 1137 (9th Cir. 2012) ..........................13
*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ............... 19, 20
*Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1021 (N.D. Cal. 2009) ..............................17
*Padilla v. Yoo*, 678 F.3d 748 (9th Cir. 2012)................................................. 17, 18
*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).........................................21
*Solida v. McKelvey*, 820 F.3d 1090 (9th Cir. 2016) .......................................... 9, 10
*Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017 (S.D. Cal. 2006) ...............................................................................................................10
*Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014)................................21
*United States v. Comprehensive Drug Testing, Inc. (CDT III)*, 621 F.3d 1162, 1172 (9th Cir. 2010) .....................................................................11-13, 23-25
*United States v. Hill*, 459 F.3d 966, 974-75 (9th Cir. 2006) ........................... 23, 24
*United States v. Bickle*, 2011 WL 3798225 (D. Nev. July 21, 2011).......................24
*United States v. Bowen*, 689 F. Supp. 2d 675, 682 (S.D.N.Y 2010) ............... 23, 24
*United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015)..................................... 22, 25
*United States v. Garcia-Alvarez*, 2015 WL 777411 (S.D. Cal. February 24, 2015) ..........................................................................23
*United States v. Hernandez*, 2016 WL 471943 (S.D. Cal. February 8, 2016) ........23
*United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987) ....................................11
*United States v. Nazemzadeh*, 2013 WL 544054 (S.D. Cal. February 12, 2013)....23
*United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)................................10
*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013................................23
*Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).......................................3, 5
*Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007) ..........20
*Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1120 (9th Cir. 2009) ....................................................................................... 13, 14
*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).......................................................13
*Wilson v. United States*, 631 F.2d 118 (9th Cir. 1980)..........................................18
*Woo v. Superior Court*, 75 Cal.App.4th 169, 176 (1999)..................................5, 7

## Statutes

26 U.S.C. § 7421(a) ...............................................................................................10

1

## <u>Rules</u>

Cal. Civ. P. § 335.1 ...............................................................................3
Cal. Civ. P. § 474 ..................................................................................5
Fed. R. Civ. P. 12 ..................................................................................2
Fed. R. Civ. P. 15 ..................................................................................7
Fed. R. Civ. P. 23 ..................................................................................1
Fed. R. Crim. P. 41................................................................... 11, 22
Fed. R. Evid. 201 .................................................................................18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

3:13-cv-2099-MMA-AGS

# I
## INTRODUCTION

On March 11, 2013, Plaintiff John Doe Company (hereinafter "JDC") commenced this class action civil suit[1] in the San Diego Superior Court on behalf of itself and more than 10 million U.S citizens against Defendants John Does 1-15 based upon allegations that unnamed Internal Revenue Service (IRS) agents violated Plaintiff's Fourth Amendment rights in connection with the execution of a search occurring at the Plaintiff's premises on March 11, 2011.[2]  On or about August 30, 2013, IRS Special Agent Gabriel Kornacki (hereinafter "Kornacki") was served with process apparently as one of the Doe defendants. Kornacki is the only defendant to have been served in the action. He is sued in his individual capacity based solely upon the jurisdiction conferred by the Supreme Court in its decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

After removal to the district court, the action was stayed on December 23, 2013, due to the pendency of a related criminal proceeding, *United States v.*

---

[1] Although Plaintiff has alleged a class action suit, a class has not been certified by the Court, and the Plaintiff will be unable to meet the requirements for class certification under Fed. R. Civ. P. 23. Under Rule 23(a), a party seeking class certification must demonstrate the following prerequisites: (1) numerosity of plaintiffs; (2) common questions of law or fact; (3) typicality of named plaintiff's claims; and (4) ability of the named plaintiff to protect the interests of the class adequately. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011).

[2] Although the Complaint alleges that the search occurred on March 11, 2011, IRS records show that the search actually occurred on March 17, 2011. This discrepancy is immaterial to the instant Motion.

1   *Pollock,* 3:12-cr-04599-MMA (S.D. Cal.) (ECF No. 7). Following entry of a guilty

2   plea in *Pollock*, the Court directed Kornacki to respond to the Complaint.[3]

3   Kornacki now brings a motion to Dismiss under Fed. R. Civ. P. 12(b).

4           Although the Complaint contains many scurrilous allegations, it is devoid of

5   any specific factual allegations against Kornacki.[4] The essence of this action

6   appears to allege that certain unnamed IRS agents over-seized electronically stored

7   information (ESI) contained on one of the Plaintiff's computer servers during the

8   execution of a search warrant. This Motion to Dismiss is brought on several

9   grounds. First, by failing to properly comply with California "Doe" procedures, the

10  action against Kornacki is time barred. Second, injunctive or declaratory relief is

11  unavailable under *Bivens*. Third, because the ESI was seized pursuant to a properly

12  issued warrant which provided for the imaging of ESI for later off-site review, no

13  Fourth Amendment violation occurred. The handling of ESI in this matter

14  comported with existing Ninth Circuit precedent. Fourth, under the doctrine of

15  collateral estoppel, Plaintiff should not be permitted to relitigate issues adjudicated

16  in the *Pollock* case. Finally, because the government proactively sought court

17

18  [3] A more detailed procedural history is contained in Kornacki's Motion for Order Authorizing Disclosure of Search Warrant Material (ECF No. 15).

19  [4] In fact, Kornacki is nowhere mentioned in the Complaint.

20

permission to access the subject ESI, Kornacki should be entitled to qualified

immunity as a matter of law.

## II
## MOTION TO DISMISS

A)     **Plaintiff improperly brought this lawsuit as an anonymous plaintiff, and its claims are time barred.**

The statute of limitations for a *Bivens* claim is derived from the applicable

state tort statute of limitations. *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir.

1991). In California, the applicable statute of limitations is two years. Cal. Civ. P.

§ 335.1; *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d

968, 979 (E.D. Cal. 2013). In this case, JDC filed its Complaint in California state

court on March 11, 2013.

Plaintiff has improperly claimed anonymity, rather than identifying itself as

a party with standing to sue. The Complaint also improperly names Doe defendants

without alleging that the Plaintiff is ignorant of the identity of the defendants.

Since the Plaintiff cannot in good faith plead such ignorance, this defect is fatal

because the statute of limitations has long passed. The Complaint should be

dismissed against Kornacki in its entirety without leave to amend.

*1)     Plaintiff is improperly identified.*

Although a plaintiff's use of a fictitious name "runs afoul of the public's

common law right of access to judicial proceedings," the Ninth Circuit has, in

3:13-cv-2099-MMA-AGS

1    limited cases, allowed parties to use pseudonyms in "special circumstances when

2    the party's need for anonymity outweighs prejudice to the opposing party and the

3    public's interest in knowing the party's identity." *Does I thru XXIII v. Adv. Textile*

4    *Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000); *Doe v. Kamehameha Sch.*, 596

5    F.3d 1036 (9th Cir. 2010). In determining whether to allow a plaintiff to proceed

6    using a fictitious name, a district court should evaluate the following factors: (1)

7    the severity of the threatened harm; (2) the reasonableness of the anonymous

8    party's fears; and (3) the anonymous party's vulnerability to retaliation. *Adv. Textile*

9    *Corp.*, 214 F.3d at 1068.

10          Here, the Plaintiff has not alleged (and cannot allege) any articulable harm

11   or injury that it might incur by proceeding under its true identity. Moreover, any

12   potential harm would clearly be outweighed by the public interest and possible

13   prejudice to the defendant in permitting anonymity. *Id.*[5] Accordingly, Plaintiff

14   should not be permitted to proceed anonymously.

15   \\

16   \\

17   \\

18   _____

19   [5] Defendant can find no instance where a private corporation has been granted permission to sue anonymously. Moreover, based upon a cursory internet search of the underlying criminal case, it appears that the Plaintiff's identity is readily accessible to the public.

20

2)      *Plaintiff improperly names John Doe defendants without*
        *pleading ignorance of their identities.*

The statute of limitations in this case is two years. *See Van Strum*, 940 F.2d

at 409; *Hardesty*, 935 F. Supp. 2d at 979. Under California law, a party can use a

timely-brought Doe pleading to effectively extend the applicable statute of

limitations by three years. California Code of Civil Procedure § 474 provides:

> When the plaintiff is ignorant of the name of a defendant, he
> must state that fact in the complaint, or the affidavit if the
> action is commenced by affidavit, and such defendant may be
> designated in any pleading or proceeding by any name, and
> when his true name is discovered, the pleading or proceeding
> must be amended accordingly...

When an action is properly brought under Section 474, "the amended complaint

substituting a new defendant for a fictitious Doe defendant filed after the statute of

limitations has expired is deemed filed as of the date the original complaint was

filed." *Kubal v. Discount Tire.com*, 2012 WL 3648607 *4 (S.D. Cal. August 23,

2012) (quoting *Woo v. Superior Court*, 75 Cal.App.4th 169, 176 (1999)).

Section 474 explicitly requires that a plaintiff plead ignorance of the

identities of the Doe defendants, and while Section 474 provides a procedure for

adding defendants after the statute of limitations has expired, it is only available

when the plaintiff is *actually* ignorant of the facts establishing its cause of action

against the party to be substituted for a Doe defendant. *McClatchy v. Coblentz,*

*Patch, Duffy & Bass, LLP*, 247 Cal.App.4th 368, 372 (2016) (citing *General Motors Corp. v. Superior Court*, 48 Cal.App.4th 580, 594 (1996)).

In the instant matter, the Plaintiff's use of Section 474 was improper. Plaintiff fails to make any allegation that would suggest that the Plaintiff was ignorant of Kornacki's identity, or the identity of any of the other agents involved in the search. *See, e.g. Henderson v. Superior Court*, 2006 WL 1392476 *2 (Cal. Ct. App. May 23, 2006) (holding that a plaintiff must plead something that can be interpreted to mean that the plaintiff is ignorant of the identity of the defendant). Accordingly, because Plaintiff has failed to properly plead the ignorance required by Section 474, the Complaint should be dismissed.

   3) *Plaintiff's claims are barred by the applicable statute of limitation.*

In general, the burden is on the defendant to show that the plaintiff was not genuinely ignorant of the identity of the John Doe defendant, and plaintiff should be granted leave to amend a complaint that fails to properly allege such ignorance. *See Fara Estates Homeowners Ass'n v. Fara Estates, Ltd*, 134 F.3d 377, 1998 WL 10744 *6 (9th Cir. 1998) (holding that the burden is on the defendant); *Lucero v. County of Kern*, 2007 WL 196292 *4-7 (Cal. Ct. App. January 23, 2007) (granting leave to amend). However, courts should not allow leave to amend a complaint where such amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178

(1962)); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

Moreover, in the context of Section 474, "the omission of the defendant's identity

in the original complaint must be real and not merely a subterfuge for avoiding the

requirements of Section 474." *Woo*, 75l Cal.App.4th at 177. *See also Miller v.*

*Thomas*, 121 Cal.App.3d 440, 445 (1981) (holding that the failure to name a party

as a "tactical choice" bars the plaintiff from later naming that party in substitution

for a Doe defendant).

Here, Plaintiff's Complaint should be dismissed and Plaintiff should be

denied leave to amend because such amendment would be futile. Plaintiff cannot in

good faith allege that it did not have knowledge of the identity of Kornacki or the

other agents who carried out the search warrant. *Butler v. Nat'l Community*

*Renaissance of California*, 766 F.3d 1191, 1201-02 (9th Cir. 2014) ("For [the

relation-back provisions of] § 474 to apply, the plaintiff must be 'genuinely

ignorant' of the defendant's identity at the time the original complaint is file)

(quoting *Hawkins v. Pac. Coast Bldg. Prods., Inc.* 124 Cal.App.4th 1497 (2004).[6]

---

[6] Plaintiff is unable to relate its stale claims against Kornacki back to the original Complaint under Fed. R. Civ. P. 15(c)(1) because the action was brought in state court and removed by Kornacki to this Court; therefore, Section 474, rather than Rule 15, applies. *See Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) ("the question whether the amended complaint stated a cause of action, including whether it was time-barred, is governed by the law of California because the relevant amendments and service of process preceded removal to federal court"). *See also* Fed. R. Civ. P. 15(c)(1)(A) (requiring the applicable state law statute of limitations to allow relation back). Likewise, even if Rule 15 were to apply, Plaintiff cannot relate back under Rule 15 because Kornacki was not served within 120 days of the filing of the Complaint. *Butler*, 766 F.3d at 1202 (requiring service on the defendant within 120 days in order for the relation-back provisions of Rule 15 to apply).

1   Plaintiff's knowledge of these individuals' identities is conclusively evinced by the

2   fact that counsel for the Plaintiff presented a draft complaint to David Leshner, the

3   Assistant United States Attorney (AUSA) handling the indictment of Blaine

4   Pollock, on August 13, 2012—approximately seven months before filing the

5   Complaint in the instant matter. (Leshner Declaration ¶ 2-3, Ex. A). This draft

6   complaint names Kornacki—along with AUSA Leshner, Eric Helfand, Tom

7   Martinez, Felicia McCain, and Maria Alvarez—as defendants. (Leshner

8   Declaration, Ex. A p. 1). Additionally, the draft complaint contains specific factual

9   allegations regarding Special Agent Kornacki's involvement with the search of

10  Plaintiff's premises. (Leshner Declaration, Ex. B, pp. 5, 140-41 ¶¶ 5 and 28).

11  Portions of the Complaint in the instant action contain almost identical allegations,

12  but Kornacki's name is noticeably absent. (*See* Complaint p. 5 ¶ 5.)

13          The draft complaint presented to AUSA Leshner establishes that Plaintiff

14  knew the identity of Kornacki and the other agents involved in the execution of the

15  search warrant well before filing its Complaint in this action and well before the

16  March 17, 2013 expiration of the period of limitations for commencing this action.

17  Because such knowledge precludes Plaintiff from now alleging that it lacked

18  knowledge of Kornacki's and the other agent's identities—and because the latest

19  date to file suit against Kornacki and the other agents was March 17, 2013—

20  Plaintiff's time-barred Complaint should be dismissed without leave to amend.

3:13-cv-2099-MMA-AGS

8

**B)**     **Injunctive and declaratory relief is unavailable under *Bivens*.**

In the Complaint under Remedies Sought (¶¶A, B and C), Plaintiff seeks

various forms of declaratory and injunctive relief with respect to records seized by

the IRS. Any claim for injunctive or declaratory relief, however, is entirely

unavailable under *Bivens* and should be dismissed. "*Bivens* created a remedy for

violations of constitutional rights committed by federal officials acting in their

individual capacities." *Consejo de Desarrollo Economico de Mexicali, A.C. v.

United States*, 482 F.3d 1157 (9th Cir. 2007). In *Bivens*, the Supreme Court

provided a judicially-created cause of action for money damages arising out of

certain constitutional violations committed by federal officers. The only remedy

available in a *Bivens* action is an award of monetary damages from the federal

officer, in his or her individual capacity. *Solida v. McKelvey*, 820 F.3d 1090 (9th

Cir. 2016). In *Solida*, the Ninth Circuit expressly held that "*Bivens* does not

encompass injunctive and declaratory relief" and any cause of action requesting

such relief is subject to dismissal.

Any suit for injunctive relief against a federal employee is in reality a suit

against the employee in his or her official capacity. *Consejo*, 482 F.3d at 1173. A

*Bivens* suit against a defendant in his or her official capacity must be construed as

an action against the United States.[7] *Consejo*, 482 F.3d at 1173; *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000). "By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Solida* 820 F.3d at 1095. The United States, as a sovereign, is immune from suit unless it has waived its immunity. *Consejo*, 482 F.3d at 1173. A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim. *Consejo*, 482 F.3d at 1173; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). A waiver of sovereign immunity by the United States must be expressed unequivocally. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). In addition, any putative action by JDC for injunctive relief against the United States in this civil proceeding is also likely barred by the Anti-Injunction Act. 26 U.S.C. § 7421(a); *Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007); *In re Return of Seized Property, $4,000 in U.S. Currency*, 130 F. Supp. 3d 1354 (S.D. Cal. 2015); *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017 (S.D. Cal. 2006). Accordingly, since there is no express wavier of sovereign immunity, any suit against Kornacki in his official capacity is also subject to mandatory dismissal under Rule 12(b)(1).

---

[7]The Supreme Court has refused to extend *Bivens* remedies from individuals to agencies. *FDIC v. Meyer* 510 U.S. 471, 484 (1994).

**C)** **The Federal Rules of Criminal Procedure provide a remedy for Plaintiff.**

The dismissal of this action does not leave Plaintiff without a suitable remedy for return of its records seized during the search. The Federal Rules of Criminal Procedure provide a straightforward and adequate remedy for the protection and return of property. Rule 41(g) states:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. . . . The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Rule 41(g) (formally Rule 41(e)) has long provided district courts with jurisdiction in criminal cases to entertain motions for the return of property seized by the government. A Rule 41 motion is typically brought as an ancillary proceeding in the criminal matter. *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987). Rule 41(g) was expanded in 1989 as part of amendments to the rules to authorize a motion to return property on behalf of any "person aggrieved by an unlawful search or seizure  property or by the deprivation of property." *United States v. Comprehensive Drug Testing, Inc. (CDT III)*, 621 F.3d 1162, 1172 (9th Cir. 2010).

In *CDT III*, the Ninth Circuit found that a district court judge cured an overreaching seizure of electronically stored information "by ordering the government to return the illegally seized data." *Id*. at 1172. Further, the court emphasized that "though styled as a motion under the Federal Rule of Criminal Procedure, when the motion is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." *Id*. at 1172. A Rule 41(g) motion is available to parties even where their property was lawfully seized. *Id*. at 1173. In contrasting a motion to suppress with a motion under Rule 41(g), the Court states:

> [B]y forcing the government to return property that it had not properly seized, CDT is preserving the integrity of its business and the Players Association is protecting the privacy and economic well-being of its members, which could easily be impaired if the government were to release the test results swept up in the dragnet.

*Id.* at 1172.

Accordingly, Rule 41(g) expressly authorizes any party (even if that party is not the subject of criminal charges) to petition a district court to invoke its equitable jurisdiction to return property taken. Although Rule 41(g) appears to be a tailor made remedy for Plaintiff with respect to its allegations of the over-seizure of ESI, the Plaintiff has ignored that remedy and instead chosen to pursue a *Bivens* damage action against Kornacki, in his individual capacity.

**D)   Since an alternative remedy is available under Rule 41(g), a**
***Bivens* remedy is precluded.**

The purpose of a *Bivens* suit is to provide a damages remedy for the
violation of a constitutional right where no other remedy exits. *Bivens*, 403 U.S. at
396. The Supreme Court has cautioned, however, that "in most instances ... a
Bivens remedy [is] unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). "In
*Wilkie*, the Court distilled its 35–year history of *Bivens* jurisprudence into a two-
step analysis for determining congressional intent as to the appropriateness of a
*Bivens* remedy." *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d
1116, 1120 (9th Cir. 2009) *citing Wilkie*, 550 U.S. at 550. A court must consider
(1) whether an "alternative, existing process for protecting the [constitutional]
interest" already exists, and (2) whether there are any other "special factors"
counseling hesitation to extending *Bivens* into a new area of law. *Wilkie*, 551 U.S.
at 550.

Here, as the Ninth Circuit has indicated in *CDT III*, *supra*, Rule 41(g)
provides such an existing procedure for protecting the Plaintiff's interest with
respect to the alleged over seizure of ESI. Although Rule 41(g) does not provide
money damages, it "provides a mechanism by which any person may seek to
recover property seized by federal agents." *Ordonez v. United States*, 680 F.3d
1135, 1137 (9th Cir. 2012). With respect to an alternative existing process, the
Court has refrained from creating a judicially implied remedy even when the

3:13-cv-2099-MMA-AGS

13

1   available remedies do not provide complete relief for a plaintiff that has suffered a

2   constitutional violation. *Western Radio Servs*., 578 F.3d at 1120. The Ninth Circuit

3   has interpreted these cases as meaning that "[s]o long as Congress' failure to

4   provide money damages, or other significant relief, has not been inadvertent,

5   courts should defer to its judgment." *Western Radio Servs*., 578 F.3d at 1120.

6        Several courts have expressly found that the procedures set out in Rule 41(g)

7   provide a comprehensive scheme that precludes a *Bivens* claim. In *Leyland v.*

8   *Edwards*, 797 F. Supp. 2d 7 (D.D.C. 2011) the district court expressly concluded

9   that Rule 41(g) precluded a *Bivens* remedy. *Id*. at 10. The court noted that,

10   although Rule 41(g) did not provide for damages, it did provide an adequate

11   remedy. *Id*. at 10-11. *See also Baird v. Holton*, 806 F. Supp. 2d 53 (D.D.C. 2011)

12   (holding that Rule 41(g) is a comprehensive scheme precluding a *Bivens* remedy).

13   With respect to the seizure of ESI, Rule 41(g) provides the aggrieved party with a

14   far superior and timely remedy over a *Bivens* action. "Rule 41(g) is a

15   comprehensive scheme that provides a straightforward and adequate remedy—and

16   one which avoids any constitutional deprivation." *Leyland*, 797 F. Supp. 2d at 10.

17   Indeed, in this matter, the Plaintiff could have sought to protect any privileged

18   information by simply bringing a Rule 41(g) motion immediately before the Court.

19   The Plaintiff can offer no explanation as to why it did not avail itself of Rule 41.

20   Instead, the Plaintiff waited until the government proactively raised the ESI issue

3:13-cv-2099-MMA-AGS

14

with the Court. Indeed, the Plaintiff's own inaction is the cause of any alleged damages. Therefore, in light of the availability of a Rule 41(g) motion to the Plaintiff, a *Bivens* remedy for post-seizure damages should not be created.

### E) Collateral estoppel bars Plaintiff from relitigating issues previously adjudicated in the Pollock criminal matter.

#### 1) *The Court granted the United States' motion to access the P Serve in the underlying criminal matter.*

In connection with the *Pollock* criminal case, on July 8, 2013, the United States filed a Motion for Authorization to Access Imaged Computer Server (Pollock-ECF No. 21). In the Motion, the government apprised the Court that in connection with the execution of the search warrant at Plaintiff's premises on March 17, 2011, the IRS imaged several computer hard drives and servers. Following the search, government counsel had been informed that one of the imaged servers (referred to as the "P Serve") contained medical records possibly protected by the Health Insurance Portability and Accountability Act ("HIPPA") (ECF No. 21-1, p. 2). In light of this representation by Pollock's counsel, no one at the IRS had attempted to access the imaged P Serve.

The government brought the Motion for the express purpose of obtaining Court authorization to access the imaged P Serve to determine whether it contained evidence within the scope of the warrant. In an effort to protect any potentially privileged information on the P Serve, the United States suggested a search

3:13-cv-2099-MMA-AGS

15

1    protocol whereby a filter attorney independent from the prosecution team would

2    first review the P Serve to determine whether it contained evidence within the

3    scope of the warrant. Only evidence within the scope of the warrant would be

4    provided to the prosecution team (ECF No. 21-1, pp. 2-3). In response, on July 22,

5    2013, Pollock filed a voluminous opposition in which he challenged various

6    aspects of the search and seizure of the P Serve (ECF No. 26). He virulently

7    asserted that the subject warrants entirely lacked probable cause and otherwise

8    violated the Fourth Amendment. He contended that the subject warrant was an

9    impermissible "general warrant" and that the imaging of the P Serve was outside

10   the scope of the warrant. In essence, in the opposition, Pollock raised the very

11   same legal and factual issues asserted here.

12          By Order entered September 20, 2013 (ECF No. 35), the Court granted the

13   United States' Motion to access the imaged P Serve. At the hearing on the Motion,

14   the Court stated that the government's suggested search protocol was reasonable

15   and appeared to "effectively prevent anyone from having access to data obtained

16   outside the scope of the warrant." (ECF No. 39-transcript of proceedings, p. 4).

17   Pollock's counsel suggested a different search protocol and requested a stay of the

18   ruling so that he could pursue an interlocutory appeal to the Ninth Circuit. On

19   October 10, 2013, Pollock filed a Notice of Appeal of the Order (ECF No. 36). On

20   December 16, 2103, the appeal was dismissed for failure to prosecute (ECF No.

3:13-cv-2099-MMA-AGS

46). Pollock never filed a motion to suppress, and Plaintiff never brought a Rule 41 motion with respect to the items seized. Although the government's Motion was granted, at Pollock's request, the government acquiesced to an even more restrictive review process than that contemplated by the Motion whereby each party would engage technical experts to collectively examine the P Serve and jointly agree to what, if any, information might be relevant to the investigation. Only that information mutually agreed to be relevant would be provided to the prosecution team. This collaborative process is described by Pollock in his Status Report, filed on January 29, 2014 (ECF No. 47, p. 8).

> 2)   *Plaintiff's claims are barred by collateral estoppel.*

Issue preclusion, or collateral estoppel, prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008). Although the claim of collateral estoppel usually is alleged as an affirmative defense, a court may entertain the defense on a motion to dismiss for failure to state a claim when all relevant facts are shown by the court's own record. *Padilla v. Yoo*, 633 F. Supp. 2d

1005, 1021 (N.D. Cal. 2009), *rev'd on other grounds*, 678 F.3d 748 (9th Cir.

2012). On a motion to dismiss, a court may properly look beyond the complaint to

matters of public record and doing so does not convert a Rule 12(b)(6) motion to

one for summary judgment. *Id*. at 1019. A court may take judicial notice of its own

records and pleadings in other cases. *Wilson v. United States*, 631 F.2d 118 (9th

Cir. 1980).[8]

     Courts have determined that collateral estoppel applies to bar a subsequent

*Bivens* (or Section 1983) action where the alleged conduct underlying the action

was previously the subject of a criminal proceeding which afforded the parties a

full and fair opportunity to litigate the civil rights claim. *Matthews v. Macanas*,

990 F.2d 467 (9th Cir. 1993) (search warrant lacked probable cause under Fourth

Amendment); *Ashford v. Skiles*, 837 F. Supp. 108 (E.D. Pa. 1993) (Suppression

hearing barred relitigation of whether arresting officers used excessive force and

whether hospital withdrew blood in violation of Fourth Amendment).

     While not brought in a motion to suppress by Pollock, the government

proactively raised the issues in this *Bivens* action by affirmatively bringing its

Motion to Access Imaged Computer Server. In opposing the Motion, Pollock was

---

[8] In connection with this motion, Kornacki has requested that the Court take judicial note under Fed. R. Evid. 201 of the court proceedings in the related *Pollock* criminal action.

given a full and fair opportunity to raise the constitutional issues asserted here. In his lengthy opposition, Pollock contended that the warrant lacked probable cause and was overbroad. He also maintained that the search exceeded the scope of the warrant in violation of the Fourth Amendment. After a hearing, the matter was adjudicated by the Court in favor of the government. Pollock subsequently entered a guilty plea which resulted in a final judgment. Pollock, as founder and a controlling person of Plaintiff, is certainly in privity with the Plaintiff. Therefore, the doctrine of collateral estoppel should bar this *Bivens* proceeding. At the very least, the Court should preclude Plaintiff from relitigating the Fourth Amendment issues actually raised and decided in the related criminal case.

> **E)** **The Complaint fails to state a *Bivens* claim.**

To survive a motion to dismiss, a *Bivens* Complaint must state more than formulistic conclusions of law, it should contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is individually liable for the misconduct alleged. *Id.* at 678.

*Bivens* suits do not support vicarious or respondeat superior liability. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used

3:13-cv-2099-MMA-AGS

1    by courts and litigants alike, is a misnomer. *Iqbal*, 556 U.S. at 677. Each

2    government official is only liable for his or her own misconduct. *OSU Student*

3    *Alliance*, 699 F.3d at 1069. "[A] plaintiff must plead that each government-official

4    defendant, through the official's own individual actions, has violated the

5    constitution." *Iqbal* 556 U.S. at 676.

6         The instant Complaint fails to comply with these basic pleading

7    requirements. [9]  The Complaint provides no factual context as to Kornacki's

8    individual role or involvement in the search of Plaintiff's premises. Although the

9    Complaint alleges that the "Doe Defendants" generically violated the Fourth

10   Amendment, it does not distinguish between defendants or make any make factual

11   allegations as to Kornacki's individual actions or involvement. The Complaint

12   does not even allege that Kornacki personally participated in any decision to image

13   the server containing the medical records. Kornacki is only left to speculate as to

14   the specific allegations asserted against him.

15        **F)    Special Agent Kornacki should be granted qualified immunity**

16        Assuming *arguendo* that Plaintiff is able to plead a *Bivens* claim, Special

17   Agent Kornacki should be granted qualified immunity. Government officials

18   _____

     [9] To the extent the Complaint can be construed as a claim for damages under HIPPA (*see* Complaint p. 12 ¶ D), the
19   claim should be denied because "HIPAA itself provides no private right of action." *Garmon v. County of Los
     Angeles*, 828 F. 837, 847 (9th Cir. 2016) (quoting *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th
     Cir. 2007)).

20

                                                                            3:13-cv-2099-MMA-AGS

1   performing discretionary functions generally are shielded from liability for civil

2   damages insofar as their conduct does not violate clearly established statutory or

3   constitutional rights of which a reasonable person would have known. *Harlow v.*

4   *Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields federal and

5   state officials from money damages unless a plaintiff pleads facts showing (1) that

6   the official violated a statutory or constitutional right, and (2) that the right was

7   'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563

8   U.S. 731 (2011). The district court may decide the order of addressing these

9   questions. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The plaintiff bears the

10  burden of proof that the right allegedly violated was clearly established.

11  *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014).

> 1)   *The Complaint does not make any specific allegations against Kornacki.*

12

13       As an initial matter, as stated above, the Complaint does not set forth any

14  specific factual allegations against Kornacki. The Complaint does not allege that

15  the search warrant lacked probable cause to search Plaintiff's premises or that the

16  search warrant affidavit prepared by Kornacki contained any material

17  misrepresentation or omissions of fact. What the Complaint seems to allege is that

18  either (1) the search warrant was facially overbroad in that it authorized an over-

19  seizure of ESI or (2) that the IRS agents executing the search exceeded the scope

20  of the warrant by deciding to image all of the ESI for later off-site review. Based

3:13-cv-2099-MMA-AGS

21

upon the search warrant materials, the *Pollock* record (both of which can be judicially noticed) and the law within the Ninth Circuit, the Court can rule, as a matter of law, that the IRS Agents, including Kornacki, are entitled qualified immunity for any decision to image all of the ESI for subsequent off-site review.

### 2)    The search warrant was not overbroad.

Rule 41(e)(2) provides that a warrant may authorize the seizure of ESI. "This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." Fed. R. Crim. P. 41, Committee Notes on Rules-2009 Subdivision (e)(2). In this case, the search warrant provides that "[t]he seizure and search of computer media will be conducted in accordance with 'Procedures For Electronically Stored Information' provided" in the search warrant affidavit.[10] The Search Warrant Affidavit provides that the entire server network may be imaged for later off-site analysis to identify data that would be within the scope of the warrant.[11]

Realizing that it is almost impossible to determine what is contained in electronically stored media without first examining its content, the Ninth Circuit

---

[10] See Attachment B (Items to be Seized) to Search Warrant (POL-SW-000004), attached to Decl. Watson as Exhibit B).

[11] See Search Warrant Affidavit (V Procedures For Electronically Stored Information)(POL-SW-000036-42).

has upheld warrants that permit the removal or imaging of large quantities of ESI for later off-site review. *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015); *United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013); *United States v. Hill*, 459 F.3d 966 (9th Cir 2006); *CDT III*, 621, F.3d at 1176 ("[t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents"). It is generally impractical and potentially disruptive to the party being searched for law enforcement officers to inspect and sort-through on site a sizable amount of ESI. *United States v. Hill*, 459 F.3d at 974-75.[12]

It is further ridiculous to believe that the target of an investigation or occupant of the premises being searched are empowered to limit the areas to be searched by law enforcement merely based upon their assurance that nothing of relevance will be found in a particular location. Law enforcement must have the ability to verify that material within the scope of a warrant is indeed not present. *Id.* at 978. The Fourth Amendment also does not mandate that searching authorities delegate pre-screening search functions to a neutral third-party to ascertain the relevance of material prior to its seizure. *United States v. Bowen*, 689 F. Supp. 2d

---

[12] Comparable warrants for seizure of ESI issued by this district court have recently withstood similar constitutional challenges. *See United States v. Hernandez,* 2016 WL 471943 (S.D. Cal. February 8, 2016); *United States v. Garcia-Alvarez,* 2015 WL 777411 (S.D. Cal. February 24, 2015); *United States v. Nazemzadeh,* 2013 WL 544054 (S.D. Cal. February 12, 2013).

3:13-cv-2099-MMA-AGS

675, 682 (S.D.N.Y 2010); *United States v. Bickle*, 2011 WL 3798225 (D. Nev. July 21, 2011).

Nevertheless, "because over-seizing is an inherent part" of the process of searching ESI, the Ninth Circuit has indicated that judicial supervision in the process is sometimes required to strike "the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures" *CDT III*, 621 F.3d at 1177. The Ninth Circuit has declined to constitutionally mandate a particular search protocol for ESI that has been seized.[13] Nevertheless, the government should not use the process of segregating large quantities of ESI as an opportunity to gain access to data for which probable cause is lacking.

> 3)   *Special Agent Kornacki did not exceed the scope of the search warrant.*

In this matter, upon being alerted by Plaintiff that the P Serve potentially included sensitive and privileged medical information, the government immediately restricted access to the P Serve and proactively raised the issue with the Court in a noticed motion. After considering Pollock's opposition, the Court approved the P Serve review process proposed by the government to permit a filter

---

[13] "Because *CDT* [did not] cast the search protocols in constitutional terms . . . law enforcement officers cannot be faulted for relying on a warrant that did not contain the non-binding protocols." *Hill* at 1051.

3:13-cv-2099-MMA-AGS

attorney, independent of the prosecution team, to determine whether it contained

evidence within the scope of the warrant.[14]

By affirmatively engaging the Court's supervision to determine access to the

P Serve, the government fully and transparently complied with the reasonableness

standard articulated in *Hill, CDT III* and *Schesso*. Plaintiff is unable to allege that

any of the IRS agents involved with the subject search violated any clearly

established constitutional rights. The IRS agents complied with both the warrant

and Ninth Circuit precedent and only examined the P serve with the express

permission of this Court. Accordingly, all of the IRS Agents, including Kornacki,

should be protected by qualified immunity.

WHEREFORE, Kornacki respectfully requests that the Court grant his

Motion to Dismiss the Complaint against him without leave to amend.

Dated: <u>November 10, 2016</u>            CAROLINE D. CIRAOLO
                                        Principal Deputy Assistant Attorney General

                                        By: <u> /s/ Henry C. Darmstadter</u>
                                        HENRY C. DARMSTADTER
                                        RYAN S. WATSON
                                        Trial Attorneys, Tax Division
                                        U.S. Department of Justice
                                        *Attorneys for Special Agent Kornacki*

---

[14] This complied with the Ninth Circuit's suggestion that ideally the prosecution team should not be directly involved in reviewing and segregating the ESI material that is responsive to the warrant. *Flores*, 802 F.3d at 1049 n. 22.